```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

STEVEN DINENNO, SR., on           :
behalf of Anthony Dinenno, a      :    HONORABLE JOSEPH E. IRENAS
minor,                            :    CIVIL ACTION NO. 08-5903 (JEI/JS)
                                  :
                Plaintiff,        :             OPINION
                                  :
     v.                           :
                                  :
LUCKY FIN WATER SPORTS, LLC;      :
MARC M. ROY, JR.; and GEORGE      :
DJUKANOVIC, JR.,                  :
                                  :
                Defendants,       :
                                  :
----------------------------------
                                  :
LUCKY FIN WATER SPORTS, LLC,      :
                                  :
                Third-Party       :
                Plaintiff,        :
                                  :
     v.                           :
                                  :
ROBERT HUGHES,                    :
                                  :
                Third-Party       :
                Defendant.        :
```

**APPEARANCES:**

WESTMORELAND VESPER & QUATTRONE, P.A.
By: Thomas J. Vesper, Esq.
8025 Black Horse Pike
West Atlantic City, New Jersey 08401
         Counsel for Plaintiff

MCGIVNEY & KLUGER, P.C.
By: Gary J. Intoccia, Esq.
23 Vreeland Road, Suite 220
Florham Park, New Jersey 07932
         Counsel for Defendant / Third Party Plaintiff Lucky Fin
         Water Sports, LLC

BENNETT, BRICKLIN & SALTZBURG LLC
By: Michael Dolich, Esq.

1601 Market Street, Floor 16
Philadelphia, Pennsylvania 19103
          Counsel for Third Party Defendant Robert Hughes


**IRENAS**, Senior District Judge:

This is a personal injury suit within this Court's admiralty jurisdiction[1] arising out of a collision between two jet skis in navigable waters of the coast of Wildwood, New Jersey.  Defendant Lucky Fin Water Sports, LLC ("Lucky Fin") moves to strike Plaintiff's expert's report and also moves for summary judgment on the sole claim against it: negligent entrustment of the jet skis. For the reasons stated herein, the Motion to Strike / Motion for Summary Judgment will be denied.[2]

### I.

On August 30, 2007, Lucky Fin rented jet skis to Defendant George Djukanovic, Jr., and Defendant Marc Roy, Jr.  Anthony Dinenno, who was 13 years old at the time, was a passenger on Djukanovic's jet ski.  Djukanovic and Roy were both operating their jet skis within the designated rental area when their jet skis collided, causing Dinenno to severely break his leg.

While it is undisputed that Roy's jet ski collided into the

---

[1] *See* 28 U.S.C. § 1333.

[2] Cross motions for summary judgment are pending in the third party action.  A separate opinion will address those motions.

2

jet ski carrying Djukanovic and Dinenno, the record contains conflicting evidence as to how the accident happened.  David Reynolds, a Lucky Fin employee who witnessed the collision, testified that he observed Roy's jet ski following directly behind Djukanovic's while both jet skis were going straight ahead.  (Reynolds Dep. p. 55, 61, 64)  He testified that he saw Roy hit Djukanovic from behind.  (Id. at p. 64)

On the other hand, the police report of the incident contains witness statements and a diagram demonstrating that Roy and Djukanovic were riding parallel to each other at high speed-- Roy on the left and Djukanovic slightly ahead on the right-- when Djukanovic turned left into Roy's path.  (Intoccia Ex. D)  Roy was unable to stop before striking Djukanovic and Dinneno.  (Id.)

The record also contains conflicting evidence as to the nature and extent of Lucky Fin's safety instructions to Roy and Djukanovic.  Reynolds, who gave the instructions and supervised the renters during their rides, testified that his verbal instructions to Roy and Djukanovic lasted about seven minutes.  (Reynolds Dep. p. 8, 21)  He testified that he told both operators that they should keep their skis 200 to 300 feet away from each other while moving; "[i]n a crossing situation, the ski on the right would have the right of way"; "if another ski or boat would happen to be coming up beside you, you maintain the speed that you are at and let that skier or boat pass you"; and "[a]lways scan the water left

3

and right at all times. Just don't get [the ski] going up to . . . 35 miles an hour and decide you're going to turn real fast without seeing- knowing if anything is coming up on either side of you." (Id. at p. 32, 90)

However, the two other jet ski renters who received the safety instructions along with Roy and Djukanovic testified differently. Anthony Nicoletti testified that Reynolds did not cover who had the right of way and that "speed was not mentioned." (Nicoletti Dep. p. 37, 60, 73)  Brian Von Deck testified that the safety instructions lasted "30 seconds or so" and that he recalled being instructed to stay five feet away from other jet skis.  (Von Deck Dep. p. 30, 32-33)[3]

The jet ski rental agreements signed by Roy, Djukanovic and Third Party Defendant Hughes[4] contain the following "riding rules":

(1) Reduce Speed; No Wake; 5 MPH Speed Limit.

    (a)   When following supervisors to and from designated rising area.

    (b)   When passing other jet skis, waverunners or boats within 100 feet.

    (c)   When passing docks or anchored boats.

    (d)   When within 100 yards of shore.

    (e)   Before making a turn.

---

[3] The record does not contain the depositions of either Roy or Djukanovic.

[4] Robert Hughes signed the agreement as the "parent/guardian or responsible party of" Dinneno. (Dolich Cert. Ex. C)

    (2)   Reckless, careless, dangerous operation of the unit will terminate your ride . . .

    (3)   Watercraft allowed only in designated riding area.

    (4)   Wear Personal Flotation Device at all times while riding.

    (5)   Do not ride near other boats docks, or people in water.

    (6)   Watch out for other boats and jet skiers.

    (7)   Report any damage to attendant.

    (8)   Maintain at least 200 feet from all watercraft above idle speed.

(Intoccia Decl. Ex. A; Dolich Cert. Ex. C)  The rental agreements also state, "I have received and understand the instructions in safe boating, covering the United States Coast Guard navigation rules, equipment requirements, and operation of a Personal Water Craft [sic], and starting the engine, operation of the controls, leaving and returning to dock, rules of the road and local and state laws."[5] (Id.)

The Complaint, filed by Steven Dinenno, Sr., on behalf of Anthony Dinneno asserts three claims: one claim of negligent

---

[5] New Jersey law dictates that jet ski rental companies "shall instruct each renter in boating safety prior to allowing such renter to operate.  Instruction shall include at least the following topics: (1) United States Coast Guard Navigation Rules: i. Meeting situation; ii. Crossing situation; iii. Overtaking situation; iv. Meaning of proper lookout; and v. Safe speed and distance; (2) Handling characteristics; (3) Equipment requirements for Class A vehicles; (4) Operating instructions for the vessel being rented; and (5) Operating under the influence of alcohol or drugs."  N.J.A.C. 13:64-3.1.

entrustment against Lucky Fin and negligence claims against Roy and Djukanovic.  Lucky Fin has cross-claimed for indemnification and contribution against Roy and Djukanovic, and by way of Third Party Complaint, asserted those same claims against Hughes.  Default has been entered against Roy and Djukanovic.[6]  Lucky Fin presently moves to strike Plaintiff's expert's report and testimony, and moves for summary judgment against Plaintiff.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district

---

[6] The docket indicates that they were timely and properly served with process.

court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**III.**

Before turning to Lucky Fin's Motion for Summary Judgment against Plaintiff, the Court addresses Lucky Fin's Motion to Strike Plaintiff's expert report.

**A.**

Plaintiff submits the expert report of Andrew Lippi, who owned a large jet ski rental business in Somers Point, New Jersey for over 20 years.[7]  In summary, Mr. Lippi opines that Lucky Fin's "poor instructions," "inadequate, unsafe and unorganized riding area" and "poor supervision" of the jet ski operators "constituted a breach of duty and care necessary to reasonably operate a safe

---

[7] Mr. Lippi also happens to be a lawyer but his report and proposed testimony are not based on his legal training.
Plaintiff does not assert that Mr. Lippi is not qualified to be an expert witness with regard to the topics upon which he opines.  Accordingly, for the purposes of the instant Motion, this Court assumes without deciding that Mr. Lippi is a qualified expert.

7

waverunner rental business."  (Lippi Report, Intoccia Decl. Ex. E)

Lucky Fin argues the report should be stricken because

> Mr. Lippi conveniently fails to state in his report or testimony that if Lucky Fin had provided the 'adequate instruction', 'adequate, safe and organized riding area' and 'proper supervision,' that the accident would have been avoided.  In other words, Mr. Lippi fails to state that the actions or inactions of Lucky Fin caused the collision to occur.  Even if Lucky Finn performed all of the actions suggested by Mr. Lippi, there is nothing to suggest the collision would have been avoided.

(Brief in support of Motion to Strike, p. 5)

Lucky Fin's argument fails because it misconstrues the purpose and substance of Mr. Lippi's report and proposed testimony.  Mr. Lippi is proffered as an expert witness with regard to the standard of care in the jet ski rental business, he is not offered as an expert in watercraft collisions and their causes.  Moreover, Lucky Fin argues that the report and testimony are "unreliable" because his opinions as to the reasonable standard of care do not "fit" with the cause, or causes, of the accident, but the Court disagrees.[8]  A reasonable factfinder could conclude that the collision would not have occurred if Roy and Djukanovic had been

---

[8] As Plaintiff observes, while Lucky Fin styles its Motion to Strike as a *Daubert* motion, the motion is actually not a *Daubert* motion, insofar as Lucky Fin does not attack Mr. Lippi's, qualifications, methodology, or application of scientific principals to the facts of this case.
  Perhaps Lucky Fin's argument may be interpreted as asserting that Mr. Lippi's opinion is irrelevant or not helpful to the trier of fact, *see* Fed. R. Evid. 702 (expert testimony is admissible if it "will assist the trier of fact to . . . determine a fact in issue"), but as explained above, the Court finds the opinion both relevant and helpful to the trier of fact.

further apart.  A reasonable factfinder might also conclude that the jet skis would have been further apart if the designated riding area were enlarged and/or Reynolds had warned the men that they were too close to each other-- both of which Mr. Lippi opines Lucky Fin should have done.

The Motion to Strike Plaintiff's expert's report and testimony will be denied.

**B.**

Lucky Fin's summary judgment motion is entirely dependent upon the success of its Motion to Strike the expert report.  Lucky Fin argues that "[s]ince plaintiff's liability expert . . . should be barred, plaintiff cannot prove that any of the actions or inaction of Lucky Fin were the proximate cause of plaintiff's injuries.  As a result, plaintiff cannot meet his burden to prove a prima facie case for negligence.  Therefore, Lucky Fin is entitled to summary judgment as a matter of law."  (Moving Brief, p. 6)

The Court will deny the Motion to Strike; therefore, the Motion for Summary Judgment necessarily fails as well.  Implicit in Lucky Fin's argument is the erroneous assumption that Plaintiff needs expert testimony with regard to causation.  The facts of this case are not complicated or beyond the general knowledge or understanding of a lay person.  A collision occurred between two jet skis.  A lay person could consider the facts and circumstances

9

surrounding the accident and come to a conclusion with regard to the cause, or causes, of the collision without the need for expert testimony.

Moreover, as apparent in Section I. of this opinion, the record contains numerous issues of disputed material facts concerning how the accident occurred and what safety instructions Lucky Fin gave to the jet ski operators.  Summary judgment is inappropriate for this reason as well.

**IV**.

For the foregoing reasons, Lucky Fin's Motion to Strike / Motion for Summary Judgment will be denied.  An appropriate order will be issued.


Dated: February 17, 2011


                                                 s/ Joseph E. Irenas
                                           **Joseph E. Irenas, S.U.S.D.J.**