```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| STEVEN DINENNO, SR., guardian ad litem for Anthony Dinenno, a minor,<br><br>          Plaintiff,<br><br>     v.<br><br>LUCKY FIN WATER SPORTS, LLC; MARC M. ROY, JR.; and GEORGE R. DJUKANOVIC, JR.,<br><br>          Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-5903 (JEI/JS)<br><br>**OPINION PURSUANT TO FED. R. CIV. P. 52(a)(1)** |

**APPEARANCES:**

WESTMORELAND VESPER & QUATTRONE, P.A.
By:  Thomas J. Vesper, Esq.
Bayport One- Suite 500
8025 Black Horse Pike
West Atlantic City, New Jersey 08401
     Counsel for Plaintiff

MCGIVNEY & KLUGER, P.C.
By:  Gary J. Intoccia, Esq.
23 Vreeland Road, Suite 220
Florham Park, New Jersey 07932
     Counsel for Defendant Lucky Finn Water Sports, LLC

**IRENAS**, Senior District Judge:

     This is a personal injury suit within this Court's admiralty jurisdiction[1] arising out of a collision between two waverunners in navigable waters off the coast of Wildwood, New Jersey. Plaintiff alleges that Defendants' negligence-- the negligence of

---

[1] *See* 28 U.S.C. § 1333.

1

the waverunner operators, Defendants Marc M. Roy, Jr. and George R. Djukanovic, Jr., and the negligence of Defendant Lucky Fin Water Sports, LLC, the rental company which owned and rented the waverunners-- caused the accident in which Anthony DiNenno's leg was severely broken.  Lucky Fin is the only appearing Defendant at this time.[2]

A bench trial as to liability only[3] was held on October 17-19, 2011.  The Court now issues this Opinion in accordance with Federal Rule of Civil Procedure 52(a)(1).[4]  Section I contains the relevant procedural history of the case.  Section II contains stipulated and uncontested facts (subsection A) and facts found by the Court (subsection B).  Section III contains conclusions of law.  Section IV briefly states the ultimate disposition of the

---

[2] Default has been entered on Lucky Fin's crossclaims for indemnification and contribution against Defendants Roy and Djukanovic, but no default has been entered against those Defendants on Plaintiff's claims.

Despite his non-appearance in this suit, Defendant Roy was deposed, and his deposition transcript was entered into evidence at trial (Exhibit No. P-9).  Similarly, Defendant Djukanovic, who is presently incarcerated (on unrelated charges), was deposed shortly before trial and testified by videoconference at the trial.

[3] On September 22, 2011, with the consent of the appearing parties, the Court entered an Order bifurcating the trial of this case into a liability portion and damages portion.

[4] "In an action tried on the facts without a jury . . . the court must find the facts specifically and state its conclusions of law separately.  The findings may . . . appear in an opinion or memorandum of decision filed by the court."  Fed. R. Civ. P. 52(a)(1).

trial.

**I.**

Plaintiff's Complaint contains three negligence counts, one against each Defendant. Count 1 is entitled "Defendant Lucky Fin Water Sports, LLC's negligent entrustment of the . . . waverunners." However the allegations contained in Count 1 encompass more than just negligent entrustment. Specifically, Count 1 alleges that Lucky Fin

> breached [its] dut[y] of care in the following respects, among others:
>
> (a) By negligently entrusting the operation of the Waverunner (sic) to Defendants [Roy] and/or [Djukanovic];
>
> (b) By the negligent failure to train and/or negligent training of [Roy] in the safe and proper operation of the Waverunner;
>
> (c) By the negligent failure to supervise and/or negligent supervision of [Roy's] operation of the Waverunner
>
> . . .
>
> (g) By negligently operating an unsafe and unseaworthy Waverunner which, among other things had an inadequately trained and inexperienced crew and operators and whose operators and pilots were knowingly allowed to operate the Waverunner while impaired by the consumption of alcoholic beverages[5];

---

[5] Despite the Complaint's allegation, Plaintiff has never argued that alcohol played any role in the accident. Witnesses testified that neither Roy nor Djukanovic (nor their passengers) consumed any alcohol on the day of the accident. (Ex. P-10, Von

>   (h) By negligently failing to give proper and thorough instructions on safety and safe operation of a Waverunner;
>
>   (i) And in such other and further respects as shall become known during the course of discovery and trial.

(Compl. ¶ 20)

Count 2 and Count 3 allege the "unseamanlike" acts and negligence of Roy and Djukanovic respectively, asserting that both men were negligent, careless, and reckless in operating the waverunners. (Compl. ¶¶ 33, 37)

Despite the Complaint's breadth of factual allegations and legal theories of liability against Lucky Fin, by the time this case had progressed through discovery, Lucky Fin's unsuccessful summary judgment motion[6], and the final pretrial conference, Plaintiff's claims against Lucky Fin had significantly narrowed.

Most notably, the Joint Final Pretrial Order does not include a negligent entrustment claim against Lucky Fin. The Order provides in relevant part, under the heading of "Plaintiff's Contended Facts":

>   Plaintiffs (sic) intend to prove the following contested facts with regard to liability:
>
>   Plaintiff will prove that Defendant Lucky Fin had

---

Deck Dep. 16:23-25; Ex. P-5, A. Nicoletti Dep. 27:10-18; Ex. P-6, D. Nicoletti Dep. 15:15-19; Ex. P-8, M. Hughes Dep. 112:2-9; Ex. P-9, Roy Dep. 66:13-25)

[6] *See Dinenno v. Lucky Fin Water Sports*, No. 08-5903, 2011 U.S. Dist. LEXIS 16604 (D.N.J. Feb. 17, 2011).

>     a duty of care to properly supervise and safeguard its
>     Waverunner users and enforce its own safe boating
>     "Rules of the Road" within its Waverunner area; and
>
>     The Defendant's employees breached their duty of
>     care to supervise and enforce [sic] and thereby were
>     a proximate cause for the Waverunner collision and the
>     injuries to Plaintiff[;]
>
>     Defendant also had a duty to properly instruct
>     its Waverunner operators;
>
>     Defendant breached this duty and as a direct
>     result caused the subject Waverunner collision and the
>     injuries to Plaintiff [sic][;]
>
>     Defendant also had a duty to maintain a safe and
>     organized Waverunner riding area;
>
>     Defendant breached this duty and as a direct
>     result caused the Waverunner collision and injuries to
>     Plaintiff [sic][;]
>
>     Plaintiff's Maritime Expert, Andrew Lippi,
>     Esquire opined on July 31, 2010 that insofar as
>     Defendant Lucky Fin there was:
>
>         i.   Negligent Instruction;
>         ii.  Inadequate, unsafe and unorganized
>              riding area;
>         iii. Negligent supervision;
>
>     And, that as a direct result of the negligent
>     rental, instruction and supervision Defendant Lucky
>     Fin was a substantial cause for [sic] the subject
>     collision.

(Final Pretrial Order, p. 3-4)

Plaintiff's trial brief also does not argue negligent entrustment. Plaintiff's brief clearly states, "[t]his case involves negligent supervision, failure to warn and instruction by Waverunner Rental Operator, Luck Fin Water Sports, LLC." (Plaintiff's Trial Brief, p. 2)

Thus, this case proceeded to trial, and it did not appear that Plaintiff intended to pursue any independent negligent entrustment theory of liability. But then, on the last day of trial, Plaintiff re-called as a rebuttal witness his marine expert, Mr. Lippi, who thereupon opined that the waverunners Lucky Fin rented were too powerful to be safely operated by inexperienced riders.[7]

Such testimony notwithstanding, the Court concludes that Plaintiff has waived the negligent entrustment claim. The final pretrial order "controls the course of the action unless the court modifies it," Fed. R. Civ. P. 16(d), and the court may modify it "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). The Third Circuit has observed, "[i]t is, of course, established law that a pretrial order when entered limits the issues for trial and in substance takes the place of pleadings covered by the pretrial order." *Basista v. Weir*, 340 F.2d 74, 85 (3d Cir. 1965).[8]

---

[7] Mr. Lippi had included this opinion in one sentence of his expert report. However, as noted above, Plaintiff did not include this in the final pretrial order, even though Mr. Lippi's other opinions regarding Lucky Fin's asserted lack of care were expressly included in the order.

[8] *See also United States v. 84,615 in United States Currency,* 379 F.3d 496, 499 (8th Cir. 2004) ("The Pretrial Order supersedes all previous pleadings and controls the subsequent course of action unless modified by a subsequent order. . . . A party may be barred from advancing theories that are not identified in the Pretrial Order.") (internal citations and quotations omitted); *Rios v. Bigler*, 67 F.3d 1543, 1549 (10th

In *Petree v. Victor Fluid Power, Inc.*, the Third Circuit held that the district court did not abuse its discretion in refusing to allow the plaintiff in a products liability suit to amend the pretrial order to include negligent failure to warn as a theory of liability. 831 F.2d 1191 (3d Cir. 1987). The complaint pled both strict liability and negligence claims. *Id.* at 1192. However, at the pretrial conference, plaintiff's counsel stated that "he would proceed under a theory of strict liability alone," and accordingly, the pretrial order did not include a negligence theory. *Id.* "Nevertheless, counsel for the plaintiff briefed the issue for trial," *Id.*, and "immediately prior to trial," plaintiff's counsel moved to amend the pretrial order to add a theory of negligent failure to warn. *Id.* at 1193.

In affirming the district court's denial of the motion to amend, the Third Circuit, relying on Fed. R. Civ. P. 16(e),

---

Cir. 1995) ("The district court has discretion to exclude from trial issues and claims not set forth in the pretrial order."); *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1443-44 (7th Cir. 1995) ("Because the parties rely on the pretrial conference to inform them precisely what is in controversy, the pretrial order is treated as superseding the pleadings and establishes the issues to be considered at trial.") (internal citations and quotations omitted); *Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F.2d 604, 609 (5th Cir. 1989) ("Pretrial orders control the course of actions and 'shall be modified only to prevent manifest injustice.' Fed.R.Civ.P. 16(e). This court consistently enforces this rule. If a claim is omitted from the order, it is waived."); *Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1329 (9th Cir. 1987) ("Issues not preserved in the pretrial order are eliminated from the action.").

explained,

> [t]he finality of the pretrial order contributes substantially to the orderly and efficient trial of a case. . . . The plaintiff has offered no compelling reason why the proposed theory of liability was not disclosed at the pretrial conference. Therefore, we find no abuse of discretion in the district court's refusal to grant plaintiff's eleventh hour motion to amend the pretrial order.

*Petree*, 831 F.2d at 1194.

The same result obtains in this case. Indeed, this case is even clearer than *Petree*. Here, Plaintiff's negligent entrustment claim was *not* included in the trial brief, and Plaintiff never moved to amend the final pretrial order. Plaintiff merely presented rebuttal expert testimony concerning negligent entrustment. Such action cannot revive a claim that was extinguished by its exclusion from the final pretrial order. Thus, the Court holds that the negligent entrustment claim is waived, and the Court will make no findings of fact or conclusions of law with respect to that claim.[9]

## II.

### A. Stipulated facts[10]

---

[9] Alternatively, the Court concludes that Mr. Lippi's very limited testimony concerning the power of the waverunners is insufficient evidence to sustain Plaintiff's burden of proof with regard to the negligent entrustment claim.

[10] All stipulated facts are taken from the Joint Final Pretrial Order, p. 3.

1. On Thursday afternoon, August 30, 2007, Anthony DiNenno was a passenger aboard a 2006 Yamaha VX110 Waverunner being operated by Defendant George R. Djukanovic, Jr. (hereafter "Djukanovic") in Wildwood, Cape May County, New Jersey.

2. Defendant Lucky Fin was the owner and commercial renter of the 2006 Yamaha VX110 being operated by Djukanovic and the 2005 Yamaha VX110 being operated by Defendant Marc M. Roy, Jr. (hereafter "Roy").

3. Defendant Lucky Fin was required to instruct renters on the operation of waverunners in compliance with the applicable sections of the New Jersey Administrative Code.[11]

4. Defendant Lucky Fin provided rules and instruction as conveyed under the applicable New Jersey Administrative Code.

5. On August 30, 2007 at the time of the accident, Defendant Lucky Fin had David Reynolds and Patrick Busk[12] supervising the delineated waverunner area for safe operations of waverunners.

6. A collision between Djukanovic and Roy's waverunners occurred on August 30, 2007.

7. As a result of this waverunner collision, Anthony DiNenno was injured.

---

[11] *See* N.J.A.C. 13:64-3.1.

[12] Testimony at trial established that Reynolds and Busk are co-owners of Lucky Fin.

**B. Findings of Fact**

1.  Defendant Lucky Fin rented waverunners[13] for use in a riding area within Richardson Sound which was approved and designated by the New Jersey State Police.

2.  The square-shaped riding area measured approximately 880 yards by 880 yards, with large spherical buoys demarcating each corner.

3.  The riding area was not directly accessible by shore; Lucky Fin operated a pontoon boat to ferry renters from the on-shore rental office to the floating dock bordering the riding area where the waverunners were stationed.

4.  At the rental office, Djukanovic and Roy each signed a Lease Agreement which states in relevant part,

> Lessee at lessee's expense is completely responsible for any of the following claims asserted by the lessor upon return of the watercraft:
>
> . . .
>
> Disobeying any of the following riding rules in which the Lessee will assume the responsibility to enforce upon the watercraft and its passengers:
>
> > 1)   Reduce Speed; No Wake; 5 MPH Speed Limit.
> >
> > > a) When following supervisors to and from

---

[13] Witnesses at trial used the terms "waverunner" and "jet ski" interchangeably. The Court uses the term "waverunner" because (a) that is the name of the particular Yamaha personal watercraft used in this case; and (b) Plaintiff's expert, Mr. Lippi, testified that jet skis were a less powerful, less user-friendly, precursor personal watercraft to the waverunners that were used in this case.

10

       designated riding area.

       b) When passing other jet skis, waverunners or boats within 100 feet.

       c) When passing docks or anchored boats.

       d) When within 100 yards of shore.

       e) Before making a turn.

2) Reckless, careless, dangerous operation of the unit will terminate your ride immediately by a supervisor without refund or deposit.

3) Watercraft allowed only in designated riding area.

4) Wear Personal Flotation Device at all times while riding.

5) Do not ride near other boats, docks, or people in water.

6) Watch out for other boats and jet skiers.

7) Report any damage to attendant.

8) Maintain at least 200 feet from all watercraft above idle speed.

I have received and understand the instructions in safe boating, covering the United States Coast Guard navigation rules, equipment requirements, and operation of a Personal Water Craft [sic], and starting the engine, operation of controls, leaving and returning to dock, rules of the road and local and state laws.

. . .

**I AGREE TO ALL ABOVE DESCRIBED CONDITIONS AND RULES IN ACCORDANCE WITH THIS LEASE.**

(Exs. D-3, D-4; caps and bold in originals).

    5.    Neither Djukanovic nor Roy had operated any type of

waverunner prior to the day of the accident.

6. During the one-hour rental period, five waverunners were being operated in the designated riding area: the waverunner operated by (1) Djukanovic with his passenger Anthony DiNenno; (2) Roy with his passenger Brian VonDeck; (3) Mark Hughes with his passenger Robert Hughes, Jr.; (4) Anthony Nicoletti with his passenger Doreen Nicoletti; and (5) David Reynolds. Reynolds was supervising the renters.

7. In addition to the written instructions contained in the Lease Agreement, Reynolds gave verbal safety instructions to all eight renters as a group as they stood on the floating dock.

8. Reynolds' verbal instructions included, *inter alia*:

- maintain a 300 foot distance between waverunners; there are no brakes to slow down the vehicles; they take 300 feet to slow down to idling speed from full throttle;

- do not follow directly behind another waverunner;

- scan the water at all times, particularly when slowing down or turning;

- overtaking (i.e., passing) situations between waverunners should not occur because waverunners should stay 300 feet away from each other;

- each person has a whistle, which should be used in emergencies as a distress signal indicating that the person blowing the whistle needs help.

9. Reynolds did not instruct the riders that he would use his whistle to alert them about their operation of the waverunner. Nor did he intend to use his whistle for that

12

purpose.  Lucky Fin does not use a sound signal of any kind to get renters' attention.[14]

10.  The United States Coast Guard requires all waverunner operators and passengers to wear personal flotation devices (e.g., life jackets) and to have a whistle.

11.  No one used their whistle for any purpose during the rental period.

12.  The collision occurred during the second half of the rental period.

13.  Prior to the collision, Reynolds reprimanded Roy for riding too close to the Nicolettis' waverunner, which was idling in the water.  Roy's actions violated Reynolds' verbal instruction to maintain 300 feet between waverunners.

14.  Reynolds reprimanded Roy by driving towards Roy and using hand gestures.  When Reynold got closer, he told Roy to keep away from other waverunners.

15.  Later, Reynolds again observed Roy violating his instructions.  This time, Roy was closer than 300 feet from Djukanovic's waverunner and was following directly behind Djukanovic.

---

[14] At trial Plaintiff's counsel referenced deposition testimony by Erica Busk, Patrick Busk's wife, that Lucky Fin used whistles to signal to renters that their time was up.  Mrs. Busk did not testify at trial and her deposition transcript was not entered into evidence.  Therefore, there was no actual evidence of this asserted fact presented at trial.

16. Upon observing the violations, Reynolds, who was more than 70-80 yards away at the time, began to pilot his waverunner towards Roy, with the intention of stopping Roy from following directly behind Djukanovic.

17. As Reynolds was approaching Roy, Roy was closing the distance between his waverunner and Djukanovic's waverunner.

18. Before Reynolds was able to get close enough to give a visible signal to Roy, Djukanovic turned left.

19. Djukanovic did not look behind his waverunner before turning. Neither Djukanovic, nor his passenger Anthony DiNenno, saw Roy's waverunner approaching them at any time prior to the actual collision.

20. The collision occurred as Djukanovic was turning left.

21. After the accident, Roy pleaded guilty to operating the waverunner at an unsafe speed. Djukanovic was not charged with any violation of law.

22. The collision resulted from (a) Roy's failure to maintain a safe distance from Djukanovic; (b) Roy riding directly behind Djuaknovic; and (c) Djukanovic's failure to look behind himself before turning.

23. Reynolds could not have prevented the collision with any type of signal (visual or auditory) because it was not foreseeable that a collision would occur until Djukanovic turned left. While Reynolds did observe Roy violating the rules several

seconds prior to the collision, it did not appear that a collision would occur until just moments before it actually occurred.  By the time it was apparent that a collision would occur, Roy would not have been able to avoid the collision even if Reynolds had signaled, because Roy was going too fast in relation to his distance from Djukanovic.

**III.**

1.   As this suit "involves a watercraft collision on navigable waters it falls within admiralty's domain.  With admiralty jurisdiction . . . comes the application of substantive admiralty law.  The exercise of admiralty jurisdiction, however, does not result in automatic displacement of state law."  *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) (internal citations and quotations omitted); *see generally Jerome B. Grubart v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 546 (1995) ("federal admiralty courts sometimes do apply state law.").  The Court need not wade into the murky waters clouding the answer as to when, or under what circumstances, federal maritime tort common law[15] may displace New Jersey's common law of negligence.  The parties have assumed that New Jersey law

---

[15]   No federal statute governs Plaintiff's claims in this case.  Federal maritime law recognizes a cause of action for "negligent breach of a general maritime duty of care."  *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 812 (2001).

applies, and the Court discerns no conflict between New Jersey's common law of negligence and the federal maritime law of negligence as applied to the facts of this case. Applying New Jersey common law to the issue of Lucky Fin's liability is not "completely incompatible with modern admiralty policy and practice," *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953); nor does the application of New Jersey law make "inroads on [the] harmonious system" that is "uniform federal maritime law." *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 373 (1959). Accordingly, the Court applies New Jersey law to the issue of Lucky Fin's liability.

   2.   "In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Brunson v. Affinity Federal Credit Union*, 199 N.J. 381, 400 (2009) (internal citations and quotations omitted).

   3.   Plaintiff first argues that Lucky Fin breached its duty of care by providing inadequate and incomplete safety instructions to the renters. In particular, Plaintiff's counsel argues that Lucky Fin did not properly instruct Roy and the rest of the group on how to "overtake" (i.e., pass) another waverunner. Even assuming, however, that Lucky Fin breached its duty of reasonable care in this regard, the Court concludes that Plaintiff has not proven by a preponderance of the evidence that

16

the asserted breach was the proximate cause of the collision. Even if Roy had been instructed on how to properly pass another waverunner, that knowledge would not have helped him avoid the collision because the collision resulted from: (a) Roy's failure to heed the instructions that *were* given regarding safe distance (maintain 300 foot distance) and positioning (do not follow directly behind another waverunner), and (b) Djukanovic's failure to keep a proper lookout, which was also covered in Lucky Fin's instructions.

   4.   Plaintiff also argues that Lucky Fin breached its duty of care by failing to use an auditory signal (specifically a whistle) to warn Roy of the impending collision with Djukanovic. This argument fails for similar reasons as the first argument. Even if the Court assumes that failing to employ a sound device as a warning system was a departure from the ordinary standard of care in the industry, blowing a whistle would not have prevented the collision.  When Reynolds first observed Roy closing the gap, the situation was not emergent.  It only became emergent-- i.e., it only became apparent that a collision was likely to occur-- when Djukanovic began to turn, which only occurred seconds before the crash.  Had Reynold blew his whistle at that point, Roy would not have had enough time or distance to avoid the crash. Therefore, Plaintiff has failed to prove proximate cause.

   5.   Lastly, the Complaint and Final Pretrial Order assert

17

that Lucky Fin breached its duty of care because the riding area was too small and unorganized, particularly for inexperienced riders.[16]  Plaintiff argues that Lucky Fin should have required riders to "make a circular rotation in the riding area" thereby adding "predictability" to the riding area.  (Ex. P-13- Lippi Report)  This theory also fails for lack of causation.  Nothing in the evidence suggests that riding in a circular motion would have prevented Roy from operating his waverunner too close to, and directly behind Djukanovic.  Indeed, it would seem that such a situation might be even more likely to occur if riders were required to follow one after the other in a single designated circular path.

6.  Thus the Court concludes that Plaintiff has failed to carry his burden of proof with regard to proximate cause, and therefore has failed to prove by a preponderance of the evidence that Lucky Fin was negligent.  Accordingly, the Court concludes that Lucky Fin's liability is 0%.

7.  As to the apportionment of liability[17] between Lucky Fin's non-appearing Co-Defendants, Roy and Djukanovic, the Court

---

[16]  Plaintiff did not directly address this aspect of his case in his trial brief nor during the trial, however, it was included in the Complaint, Final Pretrial Order, and Plaintiff's expert, Mr. Lippi, addresses it in his report which was admitted into evidence as Exhibit P-13.

[17]  Comparative negligence is the rule in both federal admiralty law, *see Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953), and New Jersey law, *see* N.J.S.A. 2A:15-5.2(a)(2).

concludes that Roy breached his duty of care by failing to obey Lucky Fin's instructions regarding distance and positioning of his waverunner and that his failure proximately caused Anthony DiNenno's injuries. Roy's fault is 80%.

8. The Court concludes that Djukanovic also breached his duty of care by failing to look behind him before making the left turn (in contravention of Lucky Fin's instruction), and that his failure proximately caused Anthony DiNenno's injuries. Djukanovic's fault is 20%.

**IV.**

For the reasons stated above, the Court concludes that Defendant Lucky Fin was not negligent and therefore is not liable to Plaintiff. As a result of this conclusion, the Court will also dismiss as moot Lucky Fin's crossclaims against Defendants Roy and Djukanovic. An appropriate Judgment and separate Order accompany this Opinion.

Dated: November 4, 2011

                                                s/ Joseph E. Irenas  
                                              **JOSEPH E. IRENAS, S.U.S.D.J.**